UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA



APR - 3 2025

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

JAMES W. BROWN, aka, Jamie Brown,               )
                                                )
On behalf of herself and other similary         )
situated transgender inmates at FCC Petersburg, )
                                                ) Case No.
    Plaintiff, Pro Se,                           )  1:25cv583-RDA-WBP
                                                )
    v.                                          )
                                                )
DONALD J. TRUMP, in his official capacity       )
as President of the United States; PAM          )
BONDI, in her official capacity as Attorney     )
General of the United States; WILLIAM           )
LOTHROP, in his official capacity as Acting     )
Director of the Federal Bureau of Prisons;      )
C. WEBBER, in her official capacity as Acting   )
Warden of FCC Petersburg,                       )
                                                )
                                                )
    Defendant's.                                )
                                                )
                                                )

---

## COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF AND REQUEST FOR APPOINTMENT OF COUNSEL

.01.   This Action is a federal constitutional challenge to Section 4(c) of Executive Order 14168, titled "Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government," which President Donald J. Trump issued just hours after his inauguration on January 20, 2025. The Order directly targets transgender Americans by attempting to deny them legal recognition under federal law and strip them of long-established legal protections. Under Section 4(c) of the Order, transgender women who are incarcerated in federal prisons will be unlawfully denied medically necessary healthcare, gender affirming undergarments, and hygiene items. The Plaintiff asks that this Court construe her complaint liberally, as to allow the development of potentially meritorious claims, See, Erickson v. Pardus, 551 U.S. 89, 127, S. Ct. 2197, 167 L.Ed. 2d 1081 (2007).

02.    Plaintiff is an adult transgender woman incarcerated in a medium security federal prison (FCC Petersburg), in Hopewell, Virgina. Plaintiff is diagnosed with gender dysphoria, a rare but serious medical condition and disability. Gender dysphoria is a recognized mental health disorder in the DSM-5 (Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition, American Psychiatric Association, 2013). The medical standard of care for treatment of gender dysphoria is to allow a transgender person to live in a sex different than their birth sex through counseling, medication such as HRT (Hormone Replacement Therapy), surgical care (including laser hair removal), and social transition.

03.    Consistent with the standard of care, plaintiff has lived as a woman and has taken female hormones continuously, since prescribed by a health care provider in the year of 2023. During her term of incarceration, she has lived as and been treated as a woman by federal correctional officials and her peers.

04.    On March 4, 2025, Plaintiff, and about fifty other transgender inmates were called to the visiting room, through institutional "call out", where executive and other institutional staff were present (about 17 staff, including Defendant, Acting Warden C. Webber). We were all informed in a group meeting that as a result of Executive Order 14168, we as transgender inmates were no longer going to receive our  prescribed HRT medications, gender affirming undergaments (bra & panties), commissary and special order items, such as undergaments and makeup, access to transgender support groups, and the transgender special "pat search exception".

05.    Plaintiff is at imminent risk of losing access to the medical care she needs to treat her gender dysphoria. Executive Order 14168 singles out transgender people to deny them essential healthcare, including medications that BOP may continue to provide to non-transgender people. The Order categorically bans transgender healthcare regardless of medical necessity. It prohibits prison medical providers from treating transgender patients' gender dysphoria on an individual basis according to independent medical judgment. This blanket ban

2

will deprive Plaintiff of essential medication she has taken continuously for the last two (2) years, puting her at high risk of serious harm.

06.   Plaintiff brings claims for violations of the Fifth Amendment to the United States Constitution;  The Eighth Amendment to the United States Constitution; Artical I of the U.S. Constitution:  the Rehabilitation Act of 1973, 29 U.S.C. § 701, et seq.; and the Administrative Procedure Act, 5 U.S.C. §§ 701-06.   Plaintiff seeks declaratory relief to enjoin enforcement of Section 4(c) of Executive Order 14168.   Without the injunctive relief sought, Plaintiff will experience irreprarable injury.

## JURISDICTION AND VENUE

07.   This action arises under the constitution of the United States.   This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

08.   This Court has authority to enter a declaratory judgment and to provide preliminary and permanent injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, Fed. R. Civ. P. 57 and 65, and this Court's inherent equitable powers.

09.   Venue is proper in this district under 28 U.S.C. § 1391(e)(1) because the Plaintiff is domiciled in this district.

10.   This Court has authority to appoint counsel for Plaintiff pursuant to 28 U.S.C. § 1915(e)(1) in order to represent her.

## PARTIES

11.   Plaintiff, JAMES W. BROWN, aka, Jamie Brown, is a transgender adult woman.   She is domiciled in Virginia, at the Federal Correctional Complex – Medium, located in Hopewell, Virginia.

12.   Defendant, Donald J. Trump, is sued in his official capacity as the President of the United States.   Defendant Trump issued and will oversee the implementation of Executive Order 14168.

3

13. Defendant, Pam Bondi, is sued in her official capacity as Attorney General of the United States. The Attorney General oversees the Department of Justice, including the Federal Bureau of Prisons (BOP), and has responsibility for over-seeing the enforcement and implementation of Section 4(c) of Executive Order 14168 with respect the the Federal Bureau of Prisons.

14. Defendant, William Lothrop, is sued in his official capacity as Acting Director of the Federal Bureau of Prisons (BOP). The Acting Director of the FBOP has responsibility for overseeing enforcement and implementation of Exectutive Order 14168 by all BOP staff.

15. Defendant, C. Webber, is sued in her official capacity as Acting Warden of FCC Petersburg, in Hopewell, Virginia. She is legally responsible for the operation of FCC Petersburg as well as the overall health and welfare of all the inmate population within that facility. The Acting Warden has responsibility for overseeing enforcement and implementation of Executive Order 14168 by all FCC Petersburg staff.

## FACTS

### I.  Gender Dysphoria

16. Gender dysphoria is a serious medical condition recognized in the DSM-5 marked by the significant distress or impairment that occurs when a transgender individual is made to live in their birth sex. The condition is highly treatable. When left untreated, however, it causes serious physical and emotional harms.

17. Scientific and medical research also shows that gender dysphoria has a physiological and biological etiology.

18. The only current, medically accepted treatment for gender dysphoria is to enable a transgender person to live in the sex different than their birth sex.

19. The medical and scientific community recognize well-established protocols for supporting a person to go through gender transition, the treatment that allows

4

a transgender person to live in their target sex. These protocols are endorsed by major medical and mental health associations in the United States and around the world, including but not limited to the American Medical Association, the American Psychiatric Association, the American Psychological Association, and the Endocrine Society.

20.    Under the accepted protocols, treatment for gender dysphoria can involve any combination of social transition, medications  including hormones, laser hair removel, and a range of surgeries. The treatment prescribed  for a particular patient depends on an individualized assessment of the patient's health needs. Gender transition care, including hormone therapy, is a highly effective treatment for gender dysphoria.

## II.  Plaintiff's Gender Dysphoria Diagnosis and Gender Transition

21.    Plaintiff is a forty three (43) year old transgender woman born in Atlanta, Georgia.

22.    Plaintiff has originaly felt this mismatch between her birth sex and who she knew herself to be as far back as age twelve (12). This mismatch has caused her significant  distress, which manifested as depression, anxiety, and lack of self-esteem. Plaintiff began formaly identifying herself as a female as far back as 2012.

23.    In September of 2022, Plaintiff contacted medical and mental health providers, who diagnosed her with gender dysphoria.

24 .    Plaintiff began living as female, used a female name, and has socialized as a female among her peers.

25.    Based on the recommendation  of her health care providers, the plaintiff began taking female hormones to treat her gender dysphoria and to allow her to live as a female.  Since then, she has continuously taken hormones to treat her gender dysphoria according to her medical provider's judgement and advice,

5

with great success.

26. Plaintiff has lived as a woman for the last eight (8) years. She is accepted, and treated as a woman by her peers, her friends, and her family.

27. Prior to January 20, 2025, plaintiff was constantly receiving this medically necessary treatment and had no reason to believe it would ever be terminated.


III.    Executive Order 14168 Will Cause Plaintiff Irreparable Injury

28. Executive order 14168 began causing harm to plaintiff almost immediately. As a result of the Order, she has already suffered significant distress. The Order also raises serious concers for her safety, medical, mental health and well-being going forward.

29. Section 2 of the Order includes a definition of "sex" that is intention-ally designed to discriminate against transgender people.  Specifically, Section 2 defines "sex" as "an individual's immutable biological classification as either male or female."  In turn, it defines "male" as "a person belonging at conception to the sex that produces the small reproductive cell," and "female" as "a person belonging , at conception to the sex that produces the large reproductive cell."  It includes these definitions to preclude transgender people from being able to live in a sex different than their birth sex and to deny them equal treatment.

30. Section 4(c) of the Order then directs federal agencies to implement this discriminatory provision.  Which will cause plaintiff serious, irreparable injury.  Section 4(c) eliminates plaintiffs ability to continue taking female hormones to treat her gender dysphoria and that her body has adjusted to receiving for the last two (2) years. Specifically, the provision requires the Attorney General to "ensure that no Federal funds are expended for any medical procedure,

treatment, or drug for the purpose of conforming an inmate's appearance to that of the opposite sex."

31.  The BOP is aware that gender dysphoria creates a serious medical need for gender transition treatments, including hormone therapy, and that the plaintiff has a serious medical need for such treatment. BOP policy expressly allows hormone therapy as a treatment for gender dysphoria based on an "individualized assessment" by medical staff.[1] If providers determine that hormone therapy is appropriate for an individual, hormone therapy "will be provided."[2] Consistent with this policy, the BOP has consistently provided hormone therapy to plaintiff for years.

32.  If plaintiff's medically necessary treatment for gender dysphoria is terminated or restricted under Section 4(c), she will be at a well-known and substantial risk of serious harm. Medical professionals experienced in the treatment of gender dysphoria and in the prolonged use of hormones for medical care recognize that the abrupt termination and ongoing denial of hormone therapy can have disastrous consequences, including serious risk of permanent physical and emotional harm, severe danger of self-mutilation, and suicidal ideation and attempts.

IV.    Executive Order 14168 Facially Classifies on Behalf of Sex and Transgender Status and Was Motivated By Discriminatory Animus

33.  Executive Order 14168 classifies individuals on the basis of sex and transgender status. It was motivated by a sex-based discriminatory purpose and animus against transgender people.

---

[1] U.S. Dep't of Just, Transgender Offender Manual § 8 (2022), available at https://www.bop.gov/policy/progstat/5200-08-cn-1.pdf
[2] Id.

34.   Defendant Trump has been transparent about his hostility toward transgender people and openly stated his intentions to create legal obstacles to eliminate legal protections for transgender people  and to deter them from obtaining medical care or being able to live in a sex other than their birth sex.  On November 15, 2022, when he announced his candidacy for President, he explicitly promised to target transgender Americans through executive action.[3]  He pledged a "day one" executive order to "cease all programs that promote the concept of sex and gender transition at any age."[4]

35.   Throughout his campaign, Defendant Trump repeatedly characterized transgender Americans in dehumanizing terms, referring to them as "deranged,"[5] and victims of "madness"[6]

---

3 ABC Action News, (Full Speech) Former President Trump announces 2024 presidential bid at 48:40–49:13, YouTube (Nov. 15, 2022), https://www.youtube.com/watch?v=8tSYwJl_htE;id. at 50:39–53 (suggesting he would attempt to ban transgender people from military service).

4. President Trump's Plan to Protect Children from Left-Wing Gender Insanity, Trump Vance: Make America Great Again! 2025 (Feb 1, 2023)

5 Gabriel Bertrand, Trump's Shocking Admission Exposes GOP's-Bigoted Agenda, Medium (June 17, 2023), https:// medium.com/illumination/trumps-shocking-admission-exposes-gop-s-bigoted-agenda-e98lbecb2c5f.

6 President Trump's Plan to Protect Children from Left-Wing Gender Insanity, supra note 7.

and "insanity".[7]  He falsely claimed transgender identity was "never heard of in all of human history" and described transgender healthcare as "mutilation."[8]

36.  Defendant Trump's campaign devoted substantial resources to promoting antitransgender policies, spending approximately $215 million on advertisements vilifying transgender Americans.[9]  These advertisements comprised over 40 percent of all pro-Trump campaign messaging in the weeks before the 2024-election. [10]

37.  Defendant Trump's official campaign platform included a "plan to Protect Children from Left-Wing Gender Insanity," which promised to deny legal recognition to transgender Americans and restrict access to medically necessary healthcare.[11]

---

[7]  Jackson Walker, Trump vows to remove 'transgender insanity' and critical race theory from US schools, IdahoNews (Dec. 23, 2024, 8:37AM), https://idahonews.com/news/nation-world/trump-vows-to remove-transgender-insanity-and-critical-race-theory-from-us-schools-phoenix-arizona-woke-speech-usa-donald-president-white-house-education-department-crt-transgender-lgbt, Trump and Vance make anti-transgender attacks central to their campaign's closing argument, NBC News (Nov. 1, 2024, 10:23AM), https://www.nbcnews.com/nbc-out/out-politics-and-policy-donald-trump-jd-vance-transgender-2024-election-rcna 178390; Donald J. Trump, Truth Social (Dec. 18, 2023), https://truthsocial.com/@realDonaldTrump/posts/111599880929254153; Gabriel Bertrand, supra note 8; Joe Middleton, Trump attacks transgender rights at Waco rally saying he will ban 'disfigurement of our youth', The Independent (Mar. 26, 2023) https://www.independent.co.uk/news/world/americas/donald-trump-transgender-waco-rally-b2308177.html.

[8]  President Trump's Plan to Protect Children from Left-Wing Gender Insanity, supra note 7.

[9]  Audrey Kemp, What Trump's win-and $215m worth of anti-trans ads – mean for the future of compaigning, The Drum (Nov. 6, 2024), https://www.thedrum.com/news/2024/11/06/after-donald-trump-s-victory-marketers-weigh-their-role-countering-divisive.

[10] Lauren Barron-Lopez et al., Why anti-transgender political ads are dominating the airwaves this election, PBS News (Nov. 2, 2024 5:35PM), https://www.pbs.org/newshour/show/why-anti-transgender-political-ads-are-dominating-the-airwaves-this-election.

[11] President Trump's Plan to Protect Children from Left-Wing Gender Insanity, supra note 7

38. On December 23, 2024, after winning the election, Defendant Trump reaff-
irmed his intent to implement discriminatory policies through executive
action, stating "with a stroke of [his] pen on day one," he would "stop the
transgender lunacy" and "get transgender out of the military and out of our
elementary schools and middle schools and high schools."[12]

39. Executive Order 14168, issued on Defendant Trump's first day in
office, implements these campaign promises, demonstrating that the discriminatory
animus expressed throughout his campaign was the driving force behind the
Order's restrictions on incarcerated transgender people for medical care
and housing.

40. The timing, content and context of Executive Order 14168 demonstrate
it was motivated by and implements the same discriminatory animus Defendant
Trump repeatedly expressed during his campaign, rather than any legitimate
government purpose.

## V.  Plaintiff is likely to succeed on the merits

41. See, Maria Moe v. Donald Trump, et al, 2023 U.S. Dist. Ct., D. MA.
(Case No. 1:25-cv-10195) (The Court GRANTED injunctive relief against EO 14168
granting a right to Hormone Replacement Therapy); Cano v. S.C. Dept. of Corrections,
2023 U.S. Dist. LEXIS 236135 (Case No. 9:22-cv-04247-DCC-MCH) (Court GRANTED
injunctive relief to provide gender affirming care); State of Washington, et al,

---

[12] Azcentral.com and The Arizona Republic, Turning Point USA Donald Trump
full speech: The 'golden age of America' begins now, says Trump, Youtube
(Dec. 23, 2024), https://www.youtube.com/watch?v=XuleXJw6BA8,at57:02-24.

v Donald J. Trump, et al, (Case No. 2:25-cv-00244) (2025) (Court GRANTED injunctive relief against Trumps Executive Order's 14168 [the "Gender Ideology EO"] and 14187 [the "Medical Services EO"] in regard to gender affirming care).

## CLAIMS FOR RELIEF

### COUNT I

Challenge to Section 4(c)
Fifth Amendment to the United States Constitution
Due Process Clause – Deprivation of Equal Protection of the Laws
Against All Defendants in Their Official Capacities

42. Plaintiff incorporates all preceding paragraphs of the Complaint as though fully set forth herein.

43. Like the Equal Protection Clause of the Fourteenth Amendment, the Due Process Clause of the Fifth Amendment prohibits unwarranted discrimination by the federal government.

44. Section 4(c) unjustifiably discriminates based on sex. They are facial sex classifications and use explicitly sex-based language to dictate government decision-making. Section 4(c) prohibits the use of federal funds for any medical treatment prescribed "for the purpose of conforming an inmate's appearance to that of the opposite sex." Section 4(c)'s express purpose is to deter all medical treatment deemed inconsistent with birth sex.

45. Section 4(c) requires BOP to treat incarcerated people differently depending on their sex. Under section 4(c), women who are not transgender are able to obtain the same medical treatments that are prohibited if they are prescribed for transgender women.

46. Under the Fifth Amendment, sex classifications are subject to heigtened scrutiny and are presumptively unconstitutional.

47. Section 4(c) also discriminates based on transgender status. Section 4(c) denies medically necessary healthcare to transgender people, solely because they are transgender.

48.  Under the Fifth Amendment, classifications based on transgender status are sex-based classifications that are subject to heightened scrutiny.

49.  Classifications based on transgender status are also subject to heightened scrutiny because transgender people constituted a quasi-suspect class. Transgender people are a discrete and identifiable group of people with one shared distinguishing characteristic: they identify and seek to live as a sex different than their birth sex. This defining characteristic bears no relation to a transgender person's ability to contribute to society. Nevertheless, transgender people have faced historical discrimination in law and in fact, and they have been unable to secure equality through the political process.

50.  There is no legitimate penological purpose or other legitimate basis for Section 4(c)'s categorical healthcare ban.

51.  Nor is Section 4(c) narrowly tailored to further a compelling government interest or substantially related to an important government interest. Moreover, Section 4(c) is not even rationally related to a government interest. Accordingly, these aspects of Executive Order 14168 violate the Fifth Amendment.

52.  If Section 4(c) is implemented, plaintiff and many other transgender inmates will suffer irreparable injury, including serious physical, psychological and emotional harm, mental anguish, distress, humiliation, and indignity.


### COUNT II

**Challenge to Section 4(c)**
**Eighth Amendment to the United States Constitution**
**Medical Deliberate Indifference**
**Against All Defendants in Their Official Capacities**

53.  Plaintiff incorporates all preceding paragraphs of the Complaint as though fully set forth herein.

54.  A prison official who has knowledge of an individual's serious need for medical care and intentionally refuses to provide that care acts with deliberate indifference and therefore violates the Eighth Amendment's prohibition on cruel and unusual punishment.

55.  Plaintiff has a serious medical need for hormone therapy as treatment for her gender dysphoria, which is a rare and serious health condition .  Abrupt termination of this treatment would violate the applicable standard of care and subject her to a known and substantial risk of serious harm.

56.  Terminating plaintiff's hormone therapy would contravene her medical providers' consistent professional judgment that she needs continuous treatment for her gender dysphoria,  as medical professionals have recognized.  Denying plaintiff this medically necessary healthcare would constitute deliberate indifference to her serious medical needs and would violate the Eigth Amendment's prohibition on cruel and unusual punishment.

57.  Section 4(c) of the Order, which was issued by Defendant Trump and is being implemented by all other Defendants, establishes a blanket rule banning medically necessary treatments for all transgender people in BOP custody, without consideration of any individual's medical needs or their healthcare providers' independent medical judgment.  As such, Section 4(c) constitutes deliberate indifference to the serious medical needs of all transgender people in BOP custody and violates the Eigth Amendment's prohibition on cruel and unusual punishment.

58.  If Section 4(c) is implemented, plaintiff and many other transgender inmates will suffer irreparable injury, including serious physical, psychological and emotional harm, mental anguish, distress, humiliation, and indignity.

13

59. Supporting case law for claim: See, Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 128L. Ed. 2d 811 (1994) "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." Furthermore the courts found that prison officials must protect prisoners from harm. Here harm means physical, sexual, psychological, self-harm, self-castration, and suicide. Id. 833; Brown v. North Carolina Dept. of Public Safety Docket No. 3:22-CV-191-MOC-DCK (2024 U.S. Dist Lexis 69358), granted injunctive relief to inmate regarding hormone replacement therapy; De'Lonta v. Johnson, 708 F.3d520 (4th cir. 2013) - regarding care for gender dysphoria; Estelle v. Gamble 429 U.S. 97, 103 (1976), citing ("gender dysphoria is a serious medical need requiring treatment regardless of status."); Edmo v. Corizon, Inc., 935 F. 3d 757 (4th cir. 2019), cert. denied, NO 19-1280, 2020 WL 6037411 (U.S. Oct. 13, 2020); Hicklin v. Precynthe, 2018 U.S. Dist. Lexis 21516, 2018 WL 80674 CE. D. MO. 20181 ("the court ordered prison officials to provide a transgender women gender dysphoria [GD] treatment including hormone therapy,electrolysis, an access to transition-related commissary, in part because prison doctors admitted she needed it but took no action."); Bostock v. Clayton County, 590 U.S. 644, 660 (2020) (where, as here, a law or policy "penalizes a person identified as male at birth for traits or actions that it tolerates in [a person] identified as female at birth," the person's "sex plays an unmistakable role."); Grimm v. Gloucester County Sch. Bd., 972 F. 3d 586, 609 (4th cir. 2020) (quoting Virginia, 518 U.S. at 533). ("A central tenet of equal protection in sex discrimination cases" is that the government "must not rely on over broad generalizations regarding the sexes."); Kadel v. Falwell, 100 F. 4th 122, 146 (4th cir. 2024) ("The excluded treatments aim at addressing incongruity between sex assigned at birth and gender identity, the very heart of transgender status.")

14

## COUNT III

### Challenge to Section 4(c)
### Rehabilitation Act of 1973, Section 504
### Disability Discrimination
### Against All Defendants in Their Official Capacities

60.  Plaintiff incorporates all preceding paragraphs of the Complaint as though fully set forth herein.

61.  Section 4(c) categorically bans medical treatments, regardless of medical need, if they are prescribed to "conform[] an inmate's appearance to that of the opposite sex"--meaning treatments are banned only if they are prescribed to treat gender dysphoria.

62.  Section 4(c) discriminates based on disability by excluding people with gender dysphoria, including plaintiff from accessing medically necessary healthcare services that are provided to all other people in BOP custody based on medical need.  Accordingly, Section 4(c) violates Section 504 of the Rehabilitation Act of 1973.

63.  If Section 4(c) is implemented, plaintiff, and many other transgender inmates, will suffer irreparable injury, including serious physical, psychological and emotional harm, mental anguish distress, humiliation, and indignity.


## COUNT IV

### Challenge to Sections 4(c)
### Administrative Procedures Act
### Arbitrary and Capricious, Unlawful, and Unconstitutional Agency Action
### Taken Without Observance of Procedure Required By Law
### Against Defendant Lothrop in His Official Capacity

64.  Plaintiff incorporates all preceeding paragraphs of the Complaint as though fully set forth herein.

65.  BOP's actions to implement Section 4(c) of the Executive Order constitute final agency action that has harmed plaintiffs, affected her legal rights, and subjected her to an imminent risk of further harm.

66.  BOP's decision to deny plaintiff medically necessary care to treat

her gender dysphoria solely because of her birth sex and transgender status

is arbitrary and carpicious.

67.  BOP'S decision to deny plaintiff's hormone replacement therapy without

conducting an individualized assessment of all relevant circumstances, including

her safety, was made without observance of procedure required by law.

68.  If Section 4(c) is implemented, plaintiff, and many other transgender

inmates will suffer irreparable injury, including serious physical, psychological

and emotional harm, mental anguish, distress, humiliation, and indignity.


## COUNT V

Challenge to Section 4(c)
### Article I, United States Constitution
Separation of Power
### Against Defendant Trump in his official capacity

69.  Plaintiff incorporates all proceding paragraphs of the complaint as

though fully set forth herein.

70.  Executive Order 14168, Section 4(c) prohibits the use of federal funds

for any medical treatment prescribed "for the purpose of conforming an inmate's

appearance to that of the opposite sex."

71.  President Trumps Executive Order imposes a condition and restriction

on the use of federal funds by the BOP to provide gender affirming care.

By attaching conditions to federal funding that were unauthorized by congress

spending, appropriation, and legislative powers.

72.  "Even before the birth of this country, spearation of powers was known

to be a defense against tyranny." Loving v. United States, 517 U.S. 748, 756

(1996).  Although separation of powers does not mean that the three branches

of government "ought to have no partial agency in, or contro[]l over the acts

of each other, it remains a basic principle of our constitutional scheme that

one branch of the government may not intrude upon the central prerogatives

of another." id. (cleaned up).  As relevant here, "[t]he United States Con-

stitution exclusively grants the power of the purse to congress, not the President." City & Cnty. Of San Francisco v. Donald J. Trump, 897 F.3d at 1231 (9th cir. 2018) (citing U.S. Const. Art. I, § 9, cl. 7 (appropriations clause); U.S. Const. Art. I § 8, cl. 1 (spending clause).

73.   Under this constitutional structure, the President's opportunity to weigh in on congressional legislation comes in the form of his veto power. "Every bill which shall have passed the House of Representatives and the Senate, shall, before it become a law, be presented to the President of the United States; if he approve he shall sign it, but if not he shall return it, with his objections[.]" U.S. Const. art. I, § 7, cl 2.   Once a bill becomes a law, however, "[t]here is no provision in the constitution that authorizes the President to enact, to amend, or to repeal" it.   Clinton v. City of New York, 524 U.S. 417, 438 (1998).   The President must instead "take care that the laws be faithfully executed."   U.S. Const. art. II, § 3.   Importantly, this duty to faithfully enforce the law, "refutes the idea that [the President] is to be a lawmaker[.]" Youngstown Sheet & Tube Co., et al. v. Sawyer, 343 U.S. at 587 ("The constitution limits [the President's] functions in lawmaking process to the recommending of laws he thinks wise and vetoing of laws he thinks bad.").   And "[b]ecause Congress's legislative power is inextricable from its spending power, the President's duty to enforce the laws necessarily extends to appropriations."   City & Cnty. of San Fransisco, 897, F.3d at 1234.   Failure to execute that duty "may be an abdication of the President's constitutional role." id.   (citing 2 U.S.C. §§681-688 for the proposition that "Congress has affirmatively and authoritatively spoken." with respect to the President's duty to execute appropriations laws)

---

[13] See also Memorandum Opinion on Presidential Authority to Impound Funds Appropriated for Assistance to Federally Impacted Schools, Op. O.L.C. 1, 309 (Dec. 1, 1969) ("With respect to the suggestion that he President has a constitutional power to decline to spend appropriated funds, we must conclude that existence of such a broad power is supported by neither reason nor precedent.")

74.   In spite of all this, President Trump's Executive Order purport to do something not even congress may do: "Suprise [federal agencies] with post acceptance...conditions" on federal funds and "impose conditions on federal [budgets] that are unrelated to the federal interest in particular national projects or programs." City of Los Angeles v. Barr, 929 F.3d 1163, 1175 (9th cir. 2019) (cleaned up).  As in City and County of San Francisco "[n]ot only has the Administration claimed for itself congress's exclusive spending power, it has also attempted to coopt congress's power to legislate." State of Washington, et al., at 23. (citing City & Cnty. of San Francisco, 897 F.3d at 1234.  But President Trump "is without authority to thwart congressional will by cancelling appropriations passed by congress" or to "decline to follow a statutory mandate or prohibition simply because of policy objections." id. at 1232 (quoting In re Aiken Cnty., 725 F.3d 255, 261 n.1.] (D.C. Cir. 2013)): see also Clinton, 524 U.S. at 445-46 (holding that a congressional act "authoriz[ing] the President himself to effect the repeal of laws, for his own policy reasons, without observing the procedures set out in Article I, § 7" violated the separation of powers).

### Request For Waver Of PLRA Exhaustion Of Administrative Remedy Requirements, Or In The Alternative, Temporary Restraining Order Until Exhaustion Can Be Compleated

75.   The Prison Litigation Reform Act (PLRA), specifically 42 U.S.C. § 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under section 1983, or any other federal law, by a prisoner confined in a jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

76.   On March 3, 2025, the Plaintiff submitted her BP-8 (Request for Informal Resolution), which was denied on March 12, 2025. On March 17, 2025, the Plaintiff submitted her BP-9 (the first step in the formal three part administrative remedy process), (Exhibit. A).

77.   This administrative remedy process could take anywhere between 95 days, if everything runs on time, to six (6) months, if all levels request an extention

to respond.  While the plaintiff is being forced to make these futile arguments,
she is being currently denied any further medication for her HRT which will cause
the plaintiff irreparable physical and mental harm if forced to go without medication
for up to six (6) months while exhausting remedies.

78.  Gender dysphoria is a serious medical condition that requires treatment.
Without proper treatment, individuals can suffer mental & physical harm (including
possible self harm). A diagnosis of gender dysphoria disorder alone may constitute
a seirous medical need:  See White v. Farrier, 849 F.2d 322, 325 (8th Cir.2011)
(upholding district court decision recognizing gender identity disorder as a serious
medical need); Fields v. Smith; 712 F. Supp. 2d 830, 862 (E.D. Wis. 2010) (gender
identity disorder is a serious medical need for purposes of the Eighth Amendment),
aff'd, 653 F.3d 550 (7th Cir. 2011); Phillips v. Mich. Dep't of Corr., 731 F. Supp.
792, 800 (W.D. Mich. 1990), aff'd 932 F.2d 969 (6th Cir. 1991) (same).  Standards
of care published by World Professional Association for Transgender Health ("WPATH")
standards dictate that [gender dysphoria]- an objectively serious medical condition-
will is some cases not resolve without gender-affirming [care]. Edmo v. Corizon,
Inc., 935 F.3d 757, 770 (9th Cir. 2019) (quoting WPATH Standards of care at 55).
Courts have described the deprivation of...gender-affirming care, as sufficient
to establish irreprable harm.  See Phillips v. Mich. Dept. of Corr., 731 F.Supp.
792, 801 (W.D.Mich. 1990)(ordering that inmate be given hormone therapy, finding
irreparable harm element clear,and explaining that "when an alleged deprivation
of constitutional right is involved, no further showing of irreparable harm is
necessary:); see also Hicklin v. Precynthe, NO. 4:16-cv-01357-ncc, 2018 U.S. Dist.
LEXIS 21516, 2018 WL 806764, at *9-10, (E.D. MO. Feb. 9, 2018)(same).

79.  As of this filing, FCC Petersburg has ceased issuing HRT medications to
all transgender inmates.

80.  "A prisoner need only exhaust those remedies actually available to [her],"
Ross v. Blake, 578 U.S. 632 635, 136 S. Ct. 1850, 195 L. Ed. 2d 117 (2016). The
Supreme Court instructed that "the ordinary meaning of the word available" in the
PLRA is "capable of use for the accomplishment of a purpose and that which is accessible
or may be obtained." id. at 642.  Therefore, "If a prison grievance procedure's
provided avenues for recourse are not meaningfully 'capable of use to obtain some
relief for the action complained of the exhaustion requirement 'does not come into
play.'" Griffin v. Bryant, 56 F.4th at 335 (quoting Ross, 578 U.S. at 642-43).

81.  The FBOP's administrative remedy process is NOT 'capable of use for accomplishment'
of overturning or stopping a presidential Executive Order, in whole or in part.
The Federal Bureau of Prisons falling under the perview of the Department of Justice
is under the Executive Branch and therefore, required to follow this Executive
Order until enjoined by this court or this court finds the EO, in whole or in part,
unconstitutional.  In this issue, the FBOP's hands are tied!

82.  While two of the four defendants are FBOP employees this is not, a per
se suit against the FBOP and "prison conditions" as much as it is a de facto suit
against President Trump's Executive Order.  Even though there are two FBOP employees
listed as defendants, since they are required to and responsible for, implemeting
the EO.  As a result the PLRA should not apply to this suit for declaratory and
injunctive relief.

83.  Wherefore, plaintiff will suffer irreparable physical and mental harm if
forced to suddenly cease her hormones and other related medications for treating
her gender dysphoria; the FBOP has immediately ceased purchasing and stocking the
necessary medications; administrative remedies are not "available" as any argument
would be futile and; the PLRA should not apply to this action as it is not against
an issue under the control of the FBOP.  The plaintiff respectfully moves this court
to (1) waive any potential PLRA requirements including administrative remedy filing;
or in the alternative, (2) issue an appropriate temporary restraining order (TRO)

preserving plaintiffs medical treatment consistant with the status quo before January 20, 2025 in order to allow plaintiff time to exhaust the administrative remedies.

## Plaintiff's Request For Appointment of Counsel

Pursuant to 28 U.S.C. § 1915(e)(1) plaintiff moves for an order appointing counsel to represent her in this case. In support of this motion, plaintiff states:

84. Plaintiff is unable to afford counsel. She has requested leave to proceed in forma pauperis.

85. Plaintiff's imprisonment will greatly limit her ability to litigate and appear at hearings. The issues involved in this case are complex and will require significant research, investigation, and testamony of expert medical doctors and psychologists. Plaintiff has limited access to the law library and limited knowledge of the law.

86. A trial or any hearings in this case will likely involve conflicting testimony, and counsel would better enable plaintiff to present evidence and cross examine witnesses.

87. Plaintiff faces an imminent threat to her health and safety if this court doesn't take immediate action on behalf of plaintiff.

88. Plaintiff is likely to succeed on the merits of this complaint. See Section V of this complaint.

89. Wherefore, plaintiff respectfully moves this court for appointment of counsel to represent her in this action.

## Prayer For Relief

WHEREFORE, plaintiff requests that this court grant the following relief:

90. Issue a judgment under 28 U.S.C. §§ 2201-02 declaring that section 4(c) of Executive Order 14168 violates plaintiff's rights under Article I and the Fifth and Eighth Amendments of the United States Constitution, the Rehabilitation Act of 1973, the Administrative Procedures Act, for the reasons and on the counts set forth above;

91. Enter a preliminary and permanent injunction prohibiting defendants and their

officers, employees, servants, agents, appointees, and successors from enforcing
Section 4(c) of Executive Order 14168, and requiring Defendants to maintain Plaintiff's,
and all other transgender inmates at FCC Petersburg prior to January 20, 2025,
medical treatment, gender affirming undergarments, transgender commissary and special
order items, transgender pat search exception, any medical procedures already ordered,
ie, Laser Hair Removal, housing assignments, and any other rights as stated in
Program Statement 5200.08 (Transgender Offender Manual) consistant with the status
quo before 01/20/2025.

92.  Award Plaintiff nominal damages, against all Defendants, jointly and
severally, as well as any other costs, expenses and any other applicable fees,
including attorney's fees, if necessary pursuant to 28 U.S.C. §2412, 42 U.S.C.
§12205, and all other applicable laws.

93.  Award Plaintiff punitive damages in the amount of $100,000.00, against
all Defendants, jointly and severally.  Executive Order 14168 was based on Defendants
discriminatory animus and reckless-callous indifference to Plaintiff's clearly
established rights and medical needs violating the Plaintiff's constitutional rights
causing Plaintiff severe mental and emotional distress.  See Smith v. Wade, 461 U.S.
30 (1983).  (The court found that the Defendnat's conduct in placing Plaintiff
in a situation the Defendant knew was likely to expose him to serious harm satisfied
the standard for punitive damages); Siggers-El v. Barlow, 433 F. Supp. 2d 811 (E.D.
Mich. 2006)  (The court found that the Defendants were liable for punitive damages
based on a showing of "evil intent".).

94.  Award Plaintiff compensatory damages, against all Defendants, jointly
and severally, and such other and further relief as the court deems just, proper
and equitable.

<u>Verification</u>

I have read the forgoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and, as to those, I believe them to be true. I certify under penalty of purjury that the forgoing is true and correct.

Submitted and executed this __25__ day of __March_____ , 2025.

X _____

James W. Brown, Pro Se.
Reg No. 13407-021
FCC Petersburg - Medium
P.O. Box 1000
Petersburg, VA  23804